**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**CAROLYN PUMPHREY**                                                  **PLAINTIFF**

**V.**                          **CASE NO. 3:19-CV-137-BD**

**SOCIAL SECURITY ADMINSTRATION**                       **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

**I.**      **Introduction:**

Carolyn Pumphrey applied for Title II disability insurance benefits, alleging disability beginning July 1, 2008. (Tr. at 169-77) Ms. Pumphrey's claims were denied initially and upon reconsideration. (Tr. at 52-78, 80-105, 111-114) After conducting a hearing on August 2, 2018, the Administrative Law Judge (ALJ) denied her application. (Tr. at 11-22) Ms. Pumphrey requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1-5) Therefore, the ALJ's decision is the final decision of the Commissioner. Ms. Pumphrey filed this case seeking judicial review of the decision denying her benefits.

**II.**      **The Commissioner's Decision:**

The ALJ found that Ms. Pumphrey had not engaged in substantial gainful activity from her alleged onset date of July 1, 2008 through March 31, 2016, when she last met the insured status requirements. (Tr. at 13) At step two of the five-step analysis, the ALJ found that Ms. Pumphrey had the following severe impairments: degenerative disc

disease, degenerative joint disease, chronic obstructive pulmonary disease, irritable bowel syndrome, depression, anxiety, and obesity. (Tr. at 13)

After finding that Ms. Pumphrey's impairments did not meet or equal a listed impairment (Tr. at 13-15), the ALJ determined that Ms. Pumphrey had the residual functional capacity (RFC) to perform sedentary work, with additional limitations. (Tr. at 15-16) She could only occasionally stoop, kneel, crouch, and crawl; and she could not tolerate concentrated exposure to temperature extremes, dust, fumes, humidity, or pulmonary irritants. (Tr. at 15) Also, mentally, she was limited to work where interpersonal contact is only incidental to the work performed; the complexity of tasks is learned and performed by rote with few variables and little judgment; and the supervision required is simple, direct, and concrete. (Tr. at 15-16)

The ALJ next found that Ms. Pumphrey was unable to perform any of her past relevant work as a child monitor and certified nursing assistant. (Tr. at 20) Relying on the testimony of a Vocational Expert (VE), the ALJ also found, based on Ms. Pumphrey's age, education, work experience and RFC, that she could perform work in the national economy as a document preparer and call out operator. (Tr. at 20-21) Based on that finding, the ALJ concluded that Ms. Pumphrey was not disabled. (Tr. at 21)

### III. Discussion:

    A.    Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means "enough that a reasonable mind would find

it adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also, evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

    B.    Ms. Pumphrey's Arguments on Appeal

On appeal, Ms. Pumphrey complains that the ALJ erred in his assessment of the medical evidence; that he did not fully develop the record with respect to her carpal tunnel syndrome; and that he did not question the VE appropriately. (Doc. No. 13 at pp. 26-41) Because there is an unresolved conflict between the VE's testimony and the *Dictionary of Occupational Titles* (DOT), the case must be remanded; and the Court need not discuss Ms. Pumphrey's other claims.

    C.    Vocational Expert Testimony

Ms. Pumphrey argues that substantial evidence does not support the ALJ's decision to deny benefits, because the jobs identified by the VE involve level-three reasoning, as defined by the DOT, thereby exceeding the ALJ's RFC finding that Ms. Pumphrey could only perform work where the complexity of tasks is learned and performed by rote with few variables, little judgment, and the supervision required is simple, direct, and concrete. (Tr. at 15-16)

The ALJ's limitation of Ms. Pumphrey to tasks learned and performed by rote with few variables and little judgment arose from evidence that she has moderate limitation in interacting with others and with concentration, persistence, and pace as well

as mild limitation in her ability to adapt and to understand, remember, and apply information. (Tr. at 15)

State-agency consultative examiner Charles Spellmann, Ph.D., examined Ms. Pumphrey in October, 2007, prior to her onset date. Ms. Pumphrey complained of general difficulty remembering and completing tasks. (Tr. at 305-06) Dr. Spellmann found that Ms. Pumphrey was able to sustain concentration and persistence if she was not having a headache, which she complained occurred weekly. (Tr. 305-308)

In 2015, Ms. Pumphrey sought treatment at Mid-South Heath Systems. During a diagnostic assessment, she was described as having an anxious and depressed mood. She recounted childhood abuse and trauma and reported needing help from special resources teachers during school. (Tr. at 466-68) She was diagnosed with adjustment disorder with mixed anxiety and depressed mood. (Tr. 473)

Ms. Pumphrey argues that the limitation to tasks that can be learned and performed by rote with few variables and little judgment does not correspond to the level-three reasoning jobs presented by the VE. Level-three reasoning is defined as applying "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form," and dealing "with problems involving several concrete variables in or from standardized situations." DOT, app. C, pt. III (1991 WL 688702 (4th ed. rev. 1991). Both the position of document preparer (DOT 249.587-018) and call out operator (DOT 237.367-014) are jobs requiring level-three reasoning.

The Eighth Circuit has repeatedly recognized that DOT definitions are "simply generic job descriptions that offer the approximate maximum requirements for each

position, rather than their range." *Id*. Nevertheless, before relying on VE evidence to support a determination that a claimant is not disabled, the ALJ has an affirmative responsibility to ask about "any possible conflict" between VE testimony and the DOT, and to obtain an explanation for any such conflict. *Renfrow v. Colvin*, 496 F.3d 918, 920-21 (8th Cir. 2007); see also, Social Security Ruling 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

In *Thomas v. Berryhill*, 881 F.3d 672 (8th Cir. 2018), the Eighth Circuit resolved the tension between reasoning levels by concluding that an RFC for simple 1-to-2 step tasks conflicts with work at a level-three reasoning requirement. *Thomas*, 881 F.3d at 677-78. The court wrote that "by incorporating the definition of level one reasoning into the RFC, the ALJ indicated 'that [the claimant] could perform only occupations at that reasoning level.'" *Id*. at 678; see *Moore*, 623 F.3d at 604. The court pointed out the conflict, stating that the VE "testified that the hypothetical individual was qualified to handle a job that the DOT classifies as two reasoning levels higher than the limitations in the RFC." *Thomas,* at 9. For that reason, the court explained, an apparent unresolved conflict existed between the VE testimony and the DOT. *Id.* An ALJ may not rely on unexplained expert testimony that someone with a particular RFC is qualified to do a job that the DOT describes as exceeding that RFC. *Id*; see also, *Montgomery v. Chater*, 69 F.3d 273, 275-77 (8th Cir. 1995).

In this case, the ALJ limited Ms. Pumphrey to jobs "performed by rote with few variables, little judgement, and simple, direct, and concrete supervision. This description does not equate to any particular DOT reasoning level, but likely falls between Level 1,

which requires a worker to apply commonsense understanding to carry out one or two-step instructions and deal with standardized situation with occasional or no variables, and Level 2, which requires a worker to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and to deal with problems involving a few, concrete variables in or from standardized situations. 2 DOT at 1011. Either way, the ALJ's RFC described a reasoning level short of the requirements of level-three reasoning, and he did not question the VE about the discrepancy. 2 *Dictionary of Occupational Titles* 1011 (4th rev. ed. 1991).

The ALJ merely asked the VE the boilerplate question of whether his testimony was consistent with the DOT, which did not resolve the conflict presented. (Tr. at 49) As set forth in *Thomas*, the ALJ should have done more than ask the expert to affirm that his testimony was consistent with the DOT. The ALJ was obligated to ask the VE for a reasonable explanation of the conflict and then to determine whether the VE's testimony warranted reliance despite the conflict. *Thomas*, at 678. Therefore, the ALJ's decision requires reversal.

**IV.    Conclusion:**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ failed to obtain VE testimony about the apparent conflict between the RFC and the DOT. The decision is hereby reversed, and the case remanded with instructions for further review consistent with this opinion.

IT IS SO ORDERED this 22nd day of June, 2020.

                                                                          _____
                                                                          UNITED STATES MAGISTRATE JUDGE